IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of A.N.G., a minor child, | ) ) ) |
| | No. 80004-3-I |
| | ) ) |
| | DIVISION ONE |
| VALERIE ANN GONZALES, | ) ) |
| | PUBLISHED OPINION |
| Appellant, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| STATE OF WASHINGTON, DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES, | ) ) ) ) |
| | ) |
| Respondent. | ) |
| | ) FILED: March 23, 2020 |

HAZELRIGG, J. — Valerie A. Gonzales[1] is the mother of A.N.G., a medically complex child. The Department of Children, Youth and Families[2] (the department) initiated dependency proceedings based on concerns about Gonzales' ability to appropriately respond to A.N.G.'s specialized medical needs. The case proceeded to a bench trial which resulted in termination of Gonzales' parental rights. The judge presiding over the termination trial previously served as the Assistant Attorney General (AAG) for the department who sought termination of Gonzales' rights as to her two older children. Gonzales appeals the termination ruling as to A.N.G. on numerous grounds, including violation of her right to due process based

---

[1] Appellant's motion to change the case caption and use initials in the opinion is denied.
[2] In July 2018, the Department of Social and Health Services (DSHS) transferred child welfare responsibilities to the Department of Children, Youth and Families. RCW 43.216.906.

on the judge's failure to recuse himself as a result of the role he played in her prior terminations. We agree with Gonzales as to the due process claim, reverse and remand for a new trial and do not reach her other assignments of error.

FACTS

A.N.G. was born in the fall of 2016 to Gonzales[3] three months premature and with significant medical needs. Following his discharge from the hospital, Gonzales missed multiple medical appointments for A.N.G. and he lost weight. In July 2017, the department filed a dependency petition and the court removed A.N.G. from Gonzales' care due to her failure to meet his medical needs.

In October 2017, Gonzales agreed to dependency, acknowledging parental deficiencies involving her history of substance abuse and her failure to schedule and attend medical appointments for A.N.G. Gonzales further agreed to a dispositional plan meant to address concerns about substance abuse. The court ordered her to regularly attend A.N.G.'s medical appointments as scheduled and to demonstrate an ability to apply the skills necessary to care for her child.

A trial was set to adjudicate termination of Gonzales' parental rights. Prior to Gonzales' arrival on the morning of trial, the AAG for the department informed the judge of his involvement in the prior case as the AAG who sought and obtained the termination orders as to the two older children. Gonzales' attorney advised the judge, "you were opposing counsel at the time and [Gonzales] did default at that time. I understand for today's proceedings that she is on her way and would like

---

[3] The alleged father of A.N.G. was identified by the department and his parental rights were terminated in separate proceedings unrelated to this appeal.

to proceed with the trial today." The judge indicated that he did not remember Gonzales or the prior proceedings. Gonzales' attorney asked that the judge inform the parties if he recognized Gonzales when she arrived.

When Gonzales arrived later, the judge informed the parties he did not have a recollection of Gonzales but did not address the potential conflict or obtain a waiver. The court then heard testimony from Gonzales and a number of witnesses, including A.N.G.'s caregivers, social workers and guardian ad litem. The court marked and admitted a number of exhibits; among those marked, but not admitted, were termination orders as to two of Gonzales' older children, drafted by the judge in his capacity as the AAG for the department. At the conclusion of trial, the court issued written findings that the department had met its burden of proving all elements of RCW 13.34.180(1), that Gonzales was unfit, and that termination was in A.N.G.'s best interests. The judge entered an order terminating Gonzales' parental rights as to A.N.G. Gonzales timely appealed.

## ANALYSIS

Gonzales argues her right to an impartial judge was violated, extrinsic evidence was improperly considered, that many of the court's findings of fact were not supported by substantial evidence, the court erred by considering the best interest of the child when determining parental fitness, and that cumulative error deprived her of the right to a fair trial. We first address Gonzales' claim that the judge violated her constitutional right to due process by not recusing himself, or in the alternative, obtaining a knowing, voluntary and intelligent waiver from Gonzales.

"Parents have a fundamental liberty and privacy interest in the care and custody of their children." In re Welfare of R.H., 176 Wn. App. 419, 425, 309 P.3d 620 (2013). Due to the constitutional rights at stake in a termination proceeding, parents are provided greater due process rights there than in other stages of dependency or other custody proceedings. Id.

This case implicates due process under the state and federal constitution because "[a] fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955); accord State ex rel. McFerran v. Justice Court of Evangelical Starr, 32 Wn.2d 544, 549-50, 202 P.2d 927 (1949). Due process requires the absence of an unconstitutional "risk of bias." Rippo v. Baker, 137 S. Ct. 905, 907, 197 L. Ed. 2d 167 (2017). The United States Supreme Court has explained that the federal Due Process Clause has been implemented by objective standards that do not require proof of actual bias, just the risk of such bias. Williams v. Pennsylvania, 136 S. Ct. 1899, 1905, 195 L. Ed. 2d 132 (2016). The inquiry requires that "[t]he Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." Id. (internal citations omitted) (emphasis omitted). The Supreme Court has made clear that due process may be violated even if a judge is not actually biased. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986). Further, RCW 13.34.090 establishes that any party involved in parental termination proceedings has a right "to receive

a decision based solely on the evidence adduced at the hearing, and to an unbiased fact finder."

In Gonzales' case, the trial court judge served as an AAG in Whatcom County prior to his appointment to the Whatcom County Superior Court bench. While serving as an AAG, the judge represented the State in dependency and termination cases concerning Gonzales' two older children. The record contains evidence of this fact, independent of the assertions of counsel prior to the start of trial, in the form of the final orders terminating Gonzales' parental rights to those children. While not admitted as trial exhibits, the record suggests that the orders were considered by the court in reaching its termination decision as to A.N.G.

The judge explained that during the dependency at issue here, prior to his judicial appointment, he was "wholly reassigned to Western Washington University" and he had not been assigned to A.N.G.'s dependency case. As such, he did not believe there was a basis for recusal. Gonzales' attorney did not request recusal but only asked that the judge advise the parties if he recognized Gonzales when she arrived. This discussion was conducted on the record, but outside Gonzales' presence, prior to her arrival in court. When Gonzales arrived, the judge only stated, "Morning Ms. Gonzales. And to answer the question you raised preliminarily here, [defense counsel], um, I do not recall by seeing your client [here] at all." This brief comment is the only reference to possible bias or recusal while Gonzales was present. There is nothing in the record to suggest that Gonzales was advised by anyone as to the judge's role in the termination of her rights as to her older children or her right to seek his recusal in the instant case.

The State cites to State v. Dominguez, where this court upheld a judge's decision not to recuse himself after having previously represented the defendant as a client and later prosecuting him. 81 Wn. App. 325, 326, 914 P.2d 141 (1996). This case is distinguishable. Dominguez was a case that focused on the appearance of fairness doctrine, not the due process clause which is what Gonzales has argued here. Id. at 329. Additionally, in Dominguez the defendant was clearly aware of the judge's prior involvement and had actually filed a motion for removal of the judge after having already filed an affidavit of prejudice against another judge. Unlike Dominguez, it is not clear that Gonzales was aware of the judge's involvement in her prior cases. Further, it appears that a significant fact for Division III was that the judge in that case had both previously represented the defendant and prosecuted him. Id. This was not the case for Gonzales where the judge's only prior involvement was against her interests in that he was seeking termination of her parental rights. Another important distinction between the case at hand and Dominguez is that criminal proceedings are not inherently interrelated the way parental termination proceedings are.

Gonzales properly points out that the prior termination cases involved that give rise to the recusal analysis here are closely related to her current case. Testimony as to the prior dependencies and termination orders where the judge was the AAG was admitted against Gonzales in the case regarding A.N.G. Gonzales objected to this testimony regarding her deficiencies from the prior cases and the judge overruled her. There was also discussion of A.N.G.'s relationship and placement with the older siblings who were living with a relative due to the

terminations. Further, Gonzales' entire parental history was relevant in terms of evaluating her current fitness to parent A.N.G. See In re Dep. of Brown, 149 Wn.2d 836, 841, 72 P.3d 757 (2003); See also In re Ross, 45 Wn.2d 654, 657, 277 P.2d 335 (1954).

The State focuses on the appearance of fairness doctrine which is distinct from the due process argument raised by Gonzales. "The appearance of fairness doctrine provides greater protection. It permits litigants to make fair trial claims based on violations of the Code of Judicial Conduct . . . regardless of whether those claims implicate due process." State v. Blizzard, 195 Wn. App. 717, 725, 381 P.3d 1241 (2016). "Our due process analysis requires a different approach. Denial of the constitutional right to a fair tribunal is a structural error that requires reversal regardless of prejudice." Id. at 727. Here, as in Blizzard, Gonzales is raising the issue for the first time on appeal as a due process challenge and the question is properly before this court under RAP 2.5(a)(3). Id.

We agree with Gonzales that due process analysis is the proper framework for the question presented. The record reflects that evidence from the prior proceedings was relied upon in this case and, as such, the judge's involvement in those cases was relevant to the due process analysis. The record also raises the question of whether Gonzales was even aware of this judge's involvement in her prior case as she proceeded to trial before him. With a record devoid of any evidence of a knowing, voluntary and intelligent waiver by Gonzales, much less any indication that she was ever advised as to the issue by her counsel, the AAG or the court, we must reverse. The proper procedure in this situation is to conduct

a colloquy with the parent as to their right to seek recusal based on the potential bias, thereby establishing a clear record of advisement and a knowing, voluntary, and intelligent waiver.[4]

The only discussion on the record in this case was between the judge and attorneys before Gonzales was present in court and the judge's comment upon her arrival was so vague as to be an insufficient basis from which to infer that she had been properly appraised of the matter. There is no indication that Gonzales' attorney addressed the issue with their client and the judge did not raise it with Gonzales sua sponte after being made aware of the potential need for recusal. Because we hold this was reversible error, we do not take up Gonzales' other assignments of error.

Reversed and remanded for a new trial.

WE CONCUR:

---

[4] We recognize that some termination orders are entered as a result of default by the parent, which could appear to conflict with our directive to obtain a proper waiver from that parent where recusal is at issue. In such situations, the court should err on the side of protecting the parent's due process rights in this highly specific context of termination, recuse and seek a different judge for entry of the default order.